MORGAN *v.* HEDGES.

1. Where tenants in common of chattels agree that one shall have exclusive possession of the chattels, the tenant so entitled may maintain replevin against his co-tenant.

2. That the jury might, upon the evidence, have found a different verdict, will not justify the reversal of a judgment.

*Appeal from District Court of Pueblo County.*

MORGAN, the appellant, brought an action of replevin against Hedges, for the recovery of a quantity of farm produce and certain farming tools. The declaration was in the *cepit* and *detinet ;* pleas : not guilty and property in the defendant. The jury returned a verdict in favor of the de-

fendant ; a motion for a new trial was interposed and over-ruled, and judgment rendered on the verdict. The record discloses substantially the following matters in evidence :

Morgan, plaintiff, testified : " I rented a farm from Charles Goodnight, in fore part of 1875; I moved my family on it and took possession of it ; I afterward employed defendant to do the work on the farm ; I agreed to furnish what money might be needed to buy seed, farming implements and gro-ceries for Mr. Hedges and his family ; I was to retain con-trol of the place and sell the crops as soon as they should be matured ; I was first to take out of the proceeds of the sales, all the money I had advanced for seed, implements and groceries, and after that, was to give Mr. Hedges for his labor one-half of what should be left of the proceeds of the sales."

Here paper is shown to witness, which he identified as the agreement between himself and the defendant in regard to the property in controversy in this suit, which reads as follows :

" Agreement made this first day of Feb., A. D. 1875, be-tween E. S. Morgan and L. A. Hedges, witnesseth as fol-lows, to wit: E. S. Morgan furnishes means to pay current expenses necessary to farm the Chatham ranch, under rent to him for the present year, and agrees to devote his time to the general financial and outside management of the affairs of the ranch, sell the products of the place and keep a full account of all receipts and disbursements, and other-wise assist in the conduct of the business, so far as he can. He will also furnish what cows may be mutually agreed upon for the purpose of a dairy. The milk and butter to be used by both families, and the surplus to be sold for mutual benefit. The stock being so furnished to the com-pany for milking, and to belong to the purchaser, at the expiration of this agreement.

E. S. Morgan will also furnish means to Mr. Hedges to defray his necessary expenses for groceries and provisions until the products of the farm can be realized from, and

assist him generally as he may be able to do and the exigencies require.

Mr. Hedges, on his part, agrees to furnish his team, and with the assistance of his family, take charge of the farming and dairy. Mr. Hedges will do the farming, and have charge of that branch of the business, putting in such crops as may be mutually agreed upon, and conduct the business generally to the best of his ability for the mutual good. The profits of the business shall be divided equally between E. S. Morgan and Mr. Hedges, share and share alike, after all advances made by E. S. Morgan are paid, the net proceeds or profits shall be so divided.

All advances made by E. S. Morgan, for the joint account, or to Mr. Hedges for his own uses, shall be paid back out of the first money realized from the products of the ranch. E. S. Morgan further agrees to divide with Mr. Hedges any money (or the product) of the place rented by him to Mr. Cox. Whatever he gets from Mr. Cox shall be divided equally. This is done by E. S. Morgan, the better to insure success to Mr. Hedges (and not as an original agreement). At the end of the current year the affairs shall be settled and closed up according to the tenor of this agreement and the association of the parties will end unless renewed by mutual agreement.

E. S. MORGAN, [SEAL.]

L. A. HEDGES, [SEAL.]"

Witness, C. PLATT.

The witness continued : " The farm I rented of Goodnight is the Chatham ranch, mentioned in the agreement ; under this agreement defendant moved on the place and went to work, and put in crops ; under this agreement I furnished the seed, implements, groceries and every thing that I had agreed to furnish ; things thus furnished by me cost $675 ; during the season the grasshoppers destroyed nearly all we had at that time ; the prospect was gloomy ; there was some hay, corn and onions left ; I then told defendant I would go to Rosita, and that he should do what he could with

what hay and corn was left, so that I should get out of them what money I had advanced ; he said that he would do the best that he could, and that I should have the money back that I had advanced out of what should be left ; that he had now a house to live in and would have no rent to pay, and that he could haul wood to town to support himself through winter ; I then went to Rosita ; when the corn and hay were ready for market, I sent Mr. Platt as my agent to go and sell the crops, as I considered this a part of my duty under the contract ; Mr. Platt sent four loads of corn, with defendant's consent, to Rosita, to me, which weighed altogether 7,750 pounds, in the ear, and was worth two cents per pound ; defendant brought up two of those loads himself ; after that defendant refused to allow Platt to take any more of the crops or any thing else from the place."

The property described in the writ in this suit was then read to the witness, and he testified that all the property described in the writ was property which he was entitled to the possession of under his agreement with the defendant, and that all the property described in the writ, together with what he had before received, would not near amount to as much, at fair market prices, as the money which he had advanced under the agreement.

[Cross-examination — see the opinion.]

\*     \*     \*     \*     \*     \*     \*     \*

On further examination by counsel for the plaintiff, the witness testified : " I did not stipulate to stay on the farm more than I wished to ; the written agreement in evidence was in no way changed or modified when I went to Rosita."

The witness, Platt, testified : " I lived with Mr. Morgan, the plaintiff, during the summer and spring of 1875, upon the Chatham ranch'; when the crop was ripe he gave me authority as his agent to take control of the property described in the writ in this suit, and sell the same ; acting under his authority I took control of the property and the defendant made no objection at that time ; I sent four loads of corn to Rosita to the plaintiff, with defendant's consent,

and defendant took two of them up himself; after that the defendant forbid me from taking any thing more from the place; I then, as agent for the plaintiff, demanded of the defendant the property described in the writ in this suit, for the purpose of selling the same; he refused to permit me to take possession of the same, or to sell any more; defendant told me that he had hauled away four loads of hay off the place, but I inquired and found out that he had hauled away eight loads; the loads weighed about one ton each, and was worth $13 or $14 per ton; the hay grown on the place during the season was greatly damaged through defendant's neglect to harvest it properly; it was not worth more than half what it would have been worth if it had been properly cared for; I was with the sheriff when the writ in this cause was levied on the property described in the same; one load of corn was taken from defendant while on the road to Pueblo to sell the same."

On cross-examination the witness testified : " The greater part of the corn described in the writ was standing in the field and uncut when it was levied upon ; the hay was in the stack in the coral; the property was all found on the place, except the load of corn which the sheriff took possession of on the road."

Abe R. Ellis testified : " I am the sheriff of this county; I served the writ in this suit; the property described in this writ I found in the possession of the defendant; I turned it over to Mr. Platt as agent of the plaintiff."

The appellant assigned for error in this court :

*First.* The jury erred in rendering a verdict in favor of the appellee contrary to the law and the evidence of the case.

*Second.* The court erred in denying the motion for a new trial.

*Third.* The court erred in rendering judgment in favor of the appellee and against the appellant.

Mr. E. P. Harmon, for appellant.

Mr. H. P. H. BROMWELL, for appellee.

ELBERT, J. The stipulations in the articles of agreement that appellant, Morgan, should sell the products of·the ranch and keep a full account of all receipts and disbursements, involved an agreement for their possession to that end.

Where tenants in common of chattels agree that one shall have exclusive possession of the chattels, the tenant so entitled may maintain replevin against his co-tenant. *Newton* v. *Gardner*, 24 Wis. 232.

While the right of the appellant, Morgan, to the possession of. the products of the ranch for the purpose of selling them, is fairly inferable from the terms of the agreement, the jury were warranted in finding, from the evidence of the appellant, that the agreement, in this respect, was subsequently modified.

He testified : "During the season the grasshoppers destroyed nearly all we had at that time. The prospect was gloomy. There was some hay, corn and onions left. I then told·defendant I would go to Rosita, and that he should do what he could with·what hay and corn was left, so that I should get out of them what money I had advanced. He said that he would do the best that he could, and that I should have the money back that I had advanced out of what should be left. * . * * * * I then went to Rosita." On cross-examination he testified: "No part of the agreement was performed. on my·part after I went to Rosita ; defendant said he would do the best he could ; none of my obligations under the agreement were performed after I went to Rosita."

"Q. Did you feel under obligations to assist on the ranch after you left for Rosita ?"

"I did not."

. It is true he testifies that he did not abandon or modify the original agreement in the matter of his right to possess and control the products of the ranch, but of this the jury

were the judges in the light of all the circumstances. That they found that there was a modification of the agreement in this particular is evidenced by their verdict. We cannot say that their finding was unsupported by the evidence. That appellant became discouraged with the prospects of the adventure ; that he left the ranch and removed to Rosita ; that he ceased to perform his part of the agreement ; and told the appellee " that he should do what he could with what hay and corn was left," are facts to which he testified himself, and are clearly open to the construction that he abandoned his right to the control and possession of the crops and turned the entire matter over to the appellee to close up to . the best advantage. That the jury might have found otherwise, does not justify a reversal.

The judgment of the court below is affirmed with costs.

*Affirmed.*