Moore vs. Smead.

Moore, Appellant, vs. Smead, Respondent.

*February 5 — March 5, 1895.*

*Deed: Grantee not estopped to deny grantor's title: Date: Contradiction by parol: Homestead: Abandonment: Lien of judgments: Ejectment against lessee: Counterclaim: Cloud upon title.*

1. The grantee in a deed is not estopped by his acceptance thereof from showing that since he went into possession the supposed title of his grantor has been divested by a paramount lien and transferred to another, and that he is rightfully in possession under such other.

2. A quitclaim deed purporting to convey all the right, title, and interest of the grantor acquired under a certain sheriff's deed was admissible to show such conveyance although it was dated two or three days earlier than the sheriff's deed. The date was impeachable by parol.

3. Where the owner of a homestead abandons it as such, still retaining the legal title, judgments docketed against him become liens upon the land at once without any proceedings in equity to enforce them.

4. Where a person removed from his homestead for no temporary reason or purpose and, with his family, took up his abode in another state, with no certain and abiding intention of returning and reoccupying the same premises, a court or jury may be justified in holding that he thereby abandoned such homestead, even though he vaguely contemplated the possibility of returning.

5. In ejectment against a mere lessee he cannot, upon a counterclaim, have the deed under which plaintiff claims set aside as a cloud upon the title of the lessor.

APPEAL from a judgment of the circuit court for Fond du Lac county: N. S. GILSON, Circuit Judge. *Affirmed in part; reversed in part.*

On May 12, 1858, Robert A. Baker obtained the legal title, by deed of conveyance duly witnessed, acknowledged, and recorded, to a part of two certain lots in the city of Fond du Lac,— less than one quarter of an acre,— and thereupon went into the possession and occupancy of the same, with his family, and occupied the same as a homestead. On May 17, 1881, said Baker failed in business and made a voluntary assignment for the benefit of his creditors. In the summer of 1881 he and his family moved from said premises to Chicago, where he and his family have continued to reside ever since. On August 12, 1881, one Henry Blythe recovered a judgment against said Baker in the circuit court for Fond du Lac county, and the same was docketed in said court on that day. On September 9, 1881, Charlotte M. Clark obtained another judgment against said Baker in the circuit court for Fond du Lac county, and the same was docketed with the clerk on that day. On May 24, 1882, the city of Fond du Lac recovered a judgment against said Baker, the plaintiff, *Moore*, and four other persons, for the sum of $39,707, in the circuit court for Rock county, and the same was docketed in Fond du Lac county July 13, 1882. 58 Wis. 170. On February 18, 1888, the said Baker and wife conveyed said premises to the defendant in this action.

On January 7, 1891, executions were issued on the said

judgment in favor of said Blythe, and also on the judgment
in favor of the said Clark, to the sheriff of Fond du Lac
county; and he thereupon levied upon the premises described,
and February 28, 1891, sold the same to Kate Pier for
$1,139.54, and June 9, 1892, said sheriff executed to the said
Kate Pier a sheriff's deed of said premises, on account of
said sale.  Under date of June 6, 1892, the said Kate Pier,
by a quitclaim deed under seal, duly witnessed and acknowl-
edged, conveyed said premises to Edward S. Bragg, who
thereupon leased said premises to the defendant in this
action.

On May 13, 1887, the plaintiff in this action commenced
a suit against said Baker and others for contribution, and to
be subrogated to the rights of said city in the said judgment
in favor of the city.  Said suit was removed from the state
court to the circuit court of the United States for the East-
ern district of Wisconsin.  Upon the hearing therein a de-
cree was entered therein, February 1, 1892, against said
Baker and others, for such contribution to the amount of
$5,940.35, and that the same was a lien on said homestead
from May 13, 1887, and that the circuit court for Rock
county was at liberty to issue execution on said judgment
in favor of the city for that amount.  Said decree was
docketed March 3, 1892, and such execution was issued
March 16, 1892, from the circuit court for Rock county.
Said premises were sold thereon to the plaintiff, *Moore*,
May 7, 1892, for $1,400.  A sheriff's deed was issued thereon
to said *Moore*, September 21, 1893, and the same was re-
corded September 22, 1893.

On September 28, 1893, the said *Moore* commenced this
action of ejectment against the defendant, the complaint
being in the statutory form.  The defendant answered by
way of admissions and denials, and alleged that his occupa-
tion and possession of the said premises were lawful, right-
ful, and peaceful, under title paramount to any and all of

said plaintiff's supposed title upon which he founded his supposed claim in this action. A jury trial was thereupon waived, and the cause was tried by the court. At the close of the testimony the defendant, by leave of the court, amended his answer by adding thereto a counterclaim alleging the title and right of possession in his lessor, Edward S. Bragg, of the property in question at the time of the commencement of this action, and averred that the title interposed by the plaintiff was without force and effect, and that the record of the same in the register's office of Fond du Lac county was a cloud upon the defendant's title, and therefore prayed judgment that such title might be declared and adjudged of no force and effect, and that the record thereof be canceled. The plaintiff thereupon, by way of reply, denied each and every allegation of said counterclaim.

At the close of the trial the court found, in addition to the facts stated, in effect, that at the time of said Baker's removal to Chicago in the summer of 1881, and from thence to the time of the trial of this action, said Baker had, and has had, no definite intention of ever returning to occupy said premises by himself or with his family, but abandoned his residence and home thereon when he first left the same in 1881, and has never resumed his home and residence in Wisconsin since such original abandonment, nor has he ever had any intent or purpose so to do; that the Blythe judgment and the Clark judgment mentioned, both at the respective dates of the docket thereof, became liens on the premises in question; that the defendant in this action possesses and claims the right to occupy and enjoy the said premises as tenant under the said Bragg; that May 7, 1892, the sheriff of Fond du Lac county, upon an execution upon the said judgment so recovered by said city, sold to the plaintiff in this action all the interest, right, and title which the said Baker had in the premises described, July 13, 1882, and also all the homestead rights which Baker had therein,

May 13, 1887; that said Baker had no homestead right or homestead claim in said premises or in any part thereof May 13, 1887, nor at any time prior thereto and after his abandonment of the same in the summer of 1881, as found; that the plaintiff claims title under the sheriff's deed of September 21, 1893, and has ever since claimed title and right of possession of the said premises under and by virtue thereof; that both parties claim title from said Baker, and neither claims any other or different title than such as is vested in him by conveyances respectively to each hereinbefore stated.

And as conclusions of law the court found that at the time of the commencement of this action the plaintiff was not the owner in fee of the premises described, nor of any part or parcel of said premises, nor was he entitled to the possession thereof or of any part thereof, and that the defendant is entitled to a judgment dismissing the complaint upon the merits, with his taxable costs and disbursements; that at the time of the commencement of this action the defendant was lawfully possessed of said premises and of every part thereof under the title of Edward S. Bragg, his lessor, who was then and still is the owner in fee simple of said premises and every part thereof; that the sheriff's deed of September 21, 1893, vested no title in the plaintiff to the said premises or any part thereof, the same being inferior and subordinate to the title of said Bragg, as found; that the record of said sheriff's deed of September 21, 1893, with the plaintiff's claim under it, is a cloud upon the title to said premises, and the defendant, as lessee, is entitled in equity to have such record expunged and canceled, for the protection of himself and the title under which he holds; that the defendant is entitled to judgment as prayed in his counterclaim.

From the judgment entered accordingly the plaintiff appeals.

Moore vs. Smead.

*Geo. E. Sutherland*, for the appellant, contended, *inter alia*, that under the statute of Wisconsin as it formerly stood a judgment attached to a homestead upon its rendition, but the right to enforce the judgment remained suspended, and when the homestead ceased to be occupied by the judgment debtor, or was alienated by him, the judgment could be enforced. *Hoyt v. Howe*, 3 Wis. 752. But the statute was amended on purpose to change this rule. Under the present statute a judgment against a man does not attach to his homestead at all. It is not now a case of suspended lien or suspended right to enforce a lien, but there is absolutely no lien whatever. Secs. 2271, 2902, 2983, R. S.; *Seamans v. Carter*, 15 Wis. 548; *Trustees v. Schell*, 17 id. 308; *Goodell v. Blumer*, 41 Wis. 436. So long as Mr. Baker had a *bona fide* intention to return and occupy the property as his homestead, and had not acquired another homestead elsewhere, and was still in the ownership, possession, and control of the property, he had not lost his homestead rights. *Edwards v. Reid*, 39 Neb. 645; *Eckman v. Scott*, 34 id. 817; *Gouhenant v. Cockrell*, 20 Tex. 98; *Duffey v. Willis*, 99 Mo. 132; *McFarland v. Washington*, 14 S. W. Rep. 354; *Kenley v. Hudelson*, 99 Ill. 493; *McDermott v. Kernan*, 72 Wis. 268; *Cotton v. Hamil*, 58 Iowa, 594; *Griffin v. Nichols*, 51 Mich. 575; *Hoppe v. Goldberg*, 82 Wis. 660, 665. It was error to grant affirmative and unconditional relief to the defendant under the alleged title of his lessor, on the counterclaim. *Call v. Chase*, 21 Wis. 511; *Gray v. Kauffman*, 82 Tex. 65; *Cook v. Bertram*, 86 Mich. 356; *Lucy v. T. & C. R. Co.* 92 Ala. 246; *Ballard v. Carmichael*, 83 Tex. 355. As both plaintiff and defendant claim from a common source, the defendant is estopped from setting up an outstanding title in a third person with which he is not connected. *Doyle v. Wade*, 11 Am. St. Rep. 334; *Bonds v. Smith*, 106 N. C. 553; *Steed v. Knowles*, 97 Ala. 573; *Swearingen v. Reed*, 2 Tex. Civ. App. 364.

*Edward S. Bragg*, of counsel, for the respondent.

Moore vs. Smead.

CASSODAY, J.   It is contended by counsel for the appellant that the defendant must stand or fall by the deed he received from Baker, February 18, 1888, and the possession he acquired under it.   In other words, the contention is that by accepting that deed he is estopped from claiming possession under one who has since acquired all the right, title, and interest in the land which his grantor possessed prior to the making of that conveyance.   We are constrained to hold that such contention cannot be maintained.   Even had the defendant entered into possession under a lease from Baker, instead of a deed, yet he would not have been estopped thereby from showing that his landlord's title had expired, and that he was rightfully in possession under a paramount title.   *England v. Slade,* 4 Term, 682; *Doe v. Edwards,* 5 Barn. & Adol. 1065; *Doe v. Barton,* 11 Adol. & E. 307; *Nellis v. Lathrop,* 22 Wend. 121; *Lamson v. Clarkson,* 113 Mass. 348; *Elliott v. Smith,* 23 Pa. St. 131; *Smith v. Crosland,* 106 Pa. St. 413.   This principle and some of these authorities have been expressly sanctioned by this court.   *Chase v. Dearborn,* 21 Wis. 61.   The two cases in this court cited by counsel as holding to the contrary are clearly distinguishable.   *Quinn v. Quinn,* 27 Wis. 168; *Watts v. Owens,* 62 Wis. 512.   The reason why a tenant cannot question the title of his landlord is very obvious. There is a contractual relation between them.   Whatever rights and interest the tenant has in the premises are necessarily under and by virtue of the contract.   The contract is an implied acknowledgment of the landlord's title.   For the tenant to deny such title is to assert that he acquired no right or interest in the premises by virtue of his lease; but this does not bar the tenant from showing that since the making of the lease the landlord has transferred the same to another, or that the same has, by legal proceedings, been divested and transferred to another, and that he has attorned to such other.   For a much stronger reason, a

grantee is not barred from showing that since he went into possession the supposed title of his grantor had been divested by a paramount lien and transferred to another, and that he is rightfully holding possession under such other. *Blight's Lessee v. Rochester*, 7 Wheat. 535; *Robertson v. Pickrell*, 109 U. S. 614; *Elliott v. Smith*, 23 Pa. St. 131; *Smith v. Crosland*, 106 Pa. St. 413; *Jackson v. Rowland*, 6 Wend. 666. In *Merryman v. Bourne*, 9 Wall. 592, it was held that: "If a party who has entered into possession of land as a tenant under another is threatened with suit upon a paramount title, the threat, under such circumstances, is equivalent to eviction. He may thereupon submit in good faith and attorn to the party holding a valid title, to avoid litigation. In such case it is incumbent upon him, and those who have profited by his submission, to show the existence and superiority of the title in question." "The relation of landlord and tenant in no wise exists between the vendor and vendee; and this is especially the case where a conveyance has been executed." *Watkins v. Holman's Lessee*, 16 Pet. 25. "The doctrine of estoppel, or the principle of legal policy which forbids a party from denying the title under which he has received a conveyance, does not apply as between vendor and vendee." *Blight's Lessee v. Rochester*, 7 Wheat. 535. As said in behalf of the court by Mr. Justice SWAYNE in *Merryman v. Bourne*, 9 Wall. 600, the vendee "holds adversely to all the world, and has the same right to deny the title of his vendor as the title of any other party." That statement was expressly sanctioned by the same court in the recent case of *Bybee v. O. & C. R. Co.* 139 U. S. 682, in which it was expressly held that "the grantee in a deed of conveyance is not estopped to deny the title of his grantor." We must hold that the defendant was not estopped from making the defense by reason of his deed from Baker.

2. It is contended by the appellant that the deed from

Kate Pier to Gen. Bragg was, upon any theory, improperly admitted in evidence, since its date is two or three days earlier than the date of the sheriff's deed to Mrs. Pier; but her deed to Bragg recites the title " acquired under and by virtue of the sheriff's deed thereof " to her, and was manifestly delivered after the execution and delivery of the sheriff's deed. The date of the instrument was impeachable by parol. *Bayley v. Taber,* 5 Mass. 286, 4 Am. Dec. 57. The deed was properly admitted in evidence.

3. It is further contended, in effect, that even if Baker abandoned the premises-in question as his homestead in 1881, yet under the statutes neither of the judgments mentioned could have become a lien thereon until specifically enforced by bill in equity, and hence that the only judgment which ever became a lien thereon was the one in favor of the city, docketed July 13, 1882, and that that only became a lien by virtue of the bill in equity filed May 13, 1887, and the decree of the federal court thereon, February 1, 1892, and the subsequent proceedings under that decree.

If at the time of such abandonment of the homestead the legal title thereto had been in some other person, who held the same for Baker and in fraud of Baker's creditors, then there might have been some force in the contention that such judgments could only be specifically enforced against the land by proceedings in equity. *Gilbert v. Stockman,* 81 Wis. 602. The ground of such equitable jurisdiction is not that a lien or charge has arisen by virtue of the judgment itself, but of an equity to enforce satisfaction of the judgment by means of an equitable execution; that is to say, equitable relief, which the court gives because execution at law cannot be had. *Pierstoff v. Jorges,* 86 Wis. 138, and cases there cited. But here Baker had the legal title to the land from 1858 to 1888. Such title, during all that time, fully appeared of record in Fond du Lac county. The three several judgments mentioned were each and all docketed in

that county at the respective dates named. The statute provides that "every such judgment, when so docketed, shall, for a period expiring ten years from the date of the rendition thereof, be a lien on the real property in the county where the same is docketed, except the homestead mentioned in sec. 2983, of every person against whom such judgment shall be rendered and docketed, and which he may have at the time of docketing thereof in the county in which such real estate is situated, or which he shall acquire at any time thereafter within said period of ten years." Sec. 2902, R. S.; *Gilbert v. Stockman,* 81 Wis. 607.

The homestead of Baker, while it remained such, was undoubtedly "exempt from seizure or sale on execution" upon either of said judgments; and the statute further provides that "such exemption shall not be impaired by *temporary removal with the intention to reoccupy the same as a homestead,* nor by a sale thereof, but shall extend to the proceeds derived from such sale while held with the intention to procure another homestead therewith, for a period not exceeding two years." Sec. 2983, S. & B. Ann. Stats. There is no claim here that Baker sold his homestead, and hence no question arises as to the exemption of any proceeds of such sale. The precise question for determination, therefore, is whether Baker's removal from his homestead in the summer of 1881 was "temporary" merely, "with the intention" of reoccupying the same as a homestead. Certainly, he never returned after he moved from the place in the summer of 1881. "Temporary" means, as defined by the dictionaries, "lasting for a time only; existing or continuing for a limited time;" "not of long duration; not permanent; transitory;" "continuing but a short time." A "homestead" means a place of residence, and implies occupancy and possession as such. The words "temporary removal" manifestly mean a removal for a fixed and temporary purpose, or for a temporary reason. *Phillips v. Root,* 68 Wis. 128; *Jarvais v.*

*Moe*, 38 Wis. 440; *Herrick v. Graves*, 16 Wis. 157. In order to prevent an abandonment by such removal, it must be made with the certain and abiding intention of returning to the premises and residing thereon as a homestead. "A person cannot have two homes at the same time, and such a removal as gains a new home is an abandonment of the old one." *Jarvais v. Moe, supra.* "The presumption is that a person is at home where he is found living, but this presumption may be rebutted by showing his abode temporary and his home elsewhere." *Ibid.* This court has liberally construed the exemption laws, and there is no intention here of doing otherwise. We have even gone to the extent of holding that "the *bona fide* intention to acquire certain land for a homestead, evidenced by *overt acts* in fitting it for such purpose, and followed *within a reasonable time* by actual occupancy, renders such land exempt from the time of its purchase with such intent." *Scofield v. Hopkins*, 61 Wis. 370. Where a person removes from his homestead without any temporary reason or temporary purpose, and goes to another state with his family, and there takes up his abode, with no certain and abiding intention of returning and reoccupying the same premises, a court or jury may be justified in holding that he thereby abandoned such homestead, even though he vaguely contemplated the possibility of returning. After careful consideration, we are constrained to hold that the evidence supports the finding that Baker abandoned the premises in question as his homestead in the summer of 1881. This being so, it necessarily follows from what has been said that the judgments in favor of Blythe and Clark, respectively, became liens thereon long prior to the docketing of the judgment under which the plaintiff claims, and hence that the defendant's lessor, through Mrs. Pier, acquired the legal title to the premises through the sheriff's sale and sheriff's deed upon those judgments.

4. The question recurs whether the defendant, as the mere

tenant of the person who thus acquired the legal title, can maintain his equitable counterclaim to remove the sheriff's deed to the plaintiff, and the execution, judgment, and decree upon which the same was based, as a cloud upon the title. Under the statute a defendant in ejectment is at liberty, by way of counterclaim, to set up any matter as a defense which would, under the old practice, have formed an equitable defense, in which case the answer must contain a demand for such judgment as he claims. Sec. 3078, R. S.; *Dobbs v. Kellogg,* 53 Wis. 448; *Lombard v. Cowham,* 34 Wis. 486. A counterclaim, when established, must in some way qualify or defeat, in whole or in part, the plaintiff's claim for judgment. *Dietrich v. Koch,* 35 Wis. 626. It must be a claim existing in favor of the defendant and against the plaintiff, between whom a several judgment may be had in the action. Sec. 2656, R. S. The defendant, as tenant of Bragg, is only concerned with the possession and his right to the possession. As indicated, he has succeeded in maintaining his possession, as against the plaintiff, under Bragg's legal title. He is therefore in no way concerned with the supposed cloud upon Bragg's legal title. Bragg is not a party, and so we could not, if we would, adjudicate upon his rights in regard to matters which in no way concern the defendant. *Call v. Chase,* 21 Wis. 511. In other words, the defendant cannot, by way of cross-complaint, vicariously litigate a question in which his landlord and the plaintiff are alone concerned.

*By the Court.* — So much of the judgment of the circuit court as removes the sheriff's deed to the plaintiff and the judgment, execution, and decree upon which the same is based, as a cloud upon the title of Bragg, is reversed, and the judgment in all other respects is affirmed, but without costs to either party, except that the appellant must pay the fees of the clerk of this court.